NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| MARK RICHARD CUSUMANO, | : | Civil No. 04-5080 (RBK) |
|  | : |  |
| Petitioner, | : |  |
|  | : |  |
| v. | : | **O P I N I O N** |
|  | : |  |
| KATHY MCFARLAND, et al., | : |  |
|  | : |  |
| Respondents. | : |  |

**APPEARANCES:**

> MARK RICHARD CUSUMANO, #07945-067
> F.C.I. Fairton
> P.O. Box 420
> Fairton, New Jersey  08320
> Petitioner pro se
>
> ADRIENNE REIM, Deputy Attorney General
> ATTORNEY GENERAL OF NEW JERSEY
> P.O. Box 086
> Trenton, New Jersey  08625
> Attorneys for Respondents

**KUGLER**, District Judge

Mark Richard Cusumano filed a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254(a) challenging a judgment of conviction in the Superior Court of New Jersey. Respondents filed an Answer, with relevant portions of the state court record, arguing that the Petition should be dismissed as unexhausted and on the merits.  Petitioner filed a Reply.  For the reasons expressed below, the Court dismisses the Petition with prejudice and declines to issue a certificate of appealability.  See 28 U.S.C. §§ 2253(c), 2254(a), (b), (c).

## I.  BACKGROUND

Petitioner challenges a judgment of conviction entered on July 16, 1999, in the Superior Court of New Jersey, Law Division, Gloucester County, after a jury convicted him of endangering the welfare of a child and two counts of sexual assault.[1]  The Law Division sentenced Petitioner to two concurrent 10-year terms of imprisonment, community supervision

---

[1] The Appellate Division summarized the facts as follows:

> The charges against defendant arose from an incident in August 1995.  Defendant and his wife were friends of the victim, M.P., and her family, and had been on several camping trips together.  On the date in question, M.P., then age thirteen, and her sister J.P., then fourteen, were invited to defendant's house overnight.  Defendant and his wife had installed a new swimming pool and had invited the children and their parents for a barbeque the following day.  The children spent the day swimming, had dinner and played video games in the evening.  M.P. testified that after defendant's wife retired for the night, the defendant took a shower and then returned to the living room clad only in a bathrobe.  He sat on the couch, pretended to fall asleep, and then opened his robe, exposing his penis and genital area in front of the girls.  M.P. and J.P. became upset, and J.P. threw a blanket over defendant to cover him up.
>
> M.P. testified that defendant told J.P. to sleep on the sofa and for her to sleep in the upstairs guest bedroom.  Later that night M.P. was awakened by defendant touching her "chest and crotch area" and saw that the defendant was naked.  He forced her to have oral sex, ejaculating in her mouth.  M.P. testified that she then ran to the bathroom and took a shower.
>
> A year later during the summer of 1996 M.P. told a friend about the incident, and the friend urged her to tell her mother.  However, it was not until approximately another year had passed when the mother had mentioned previous camping trips with the defendant that M.P. told her mother about the incident.  M.P. and her mother then went to the Washington Township Police Department where M.P. gave a statement to Detective Brecht about the incident.

State v. Cusumano, No. A-7041-98T4 slip op. at 2-3 (App. Div. June 1, 2001).

for life, and mandatory fines and liens.  Petitioner appealed, and in an opinion filed June 1, 2001, the Appellate Division of the Superior Court of New Jersey affirmed.  State v. Cusumano, No. A-7041-98T4 slip op. (App. Div. June 1, 2001).  On September 20, 2001, the Supreme Court of New Jersey denied certification.  State v. Cusumano, 170 N.J. 89 (2001) (table).

On March 15, 2002, Petitioner executed a pro se petition for post conviction relief asserting ineffective assistance of counsel, which was date-stamped March 27, 2002.  By order filed January 21, 2003, the Law Division denied relief without conducting an evidentiary hearing.  Petitioner appealed, and in an opinion filed May 24, 2004, the Appellate Division affirmed the order denying post conviction relief.  State v. Cusumano, 369 N.J. Super. 305 (App. Div. 2004).  On September 10, 2004, the New Jersey Supreme Court denied certification.  State v. Cusumano, 181 N.J. 546 (2004) (table).

Petitioner executed the Petition which is now before the Court on September 29, 2004.  The Clerk received it on October 15, 2004.  The Court notified Petitioner of the consequences of filing such a Petition under the Antiterrorism and Effective Death Penalty Act ("AEDPA") and gave him an opportunity to withdraw the Petition and file one all-inclusive Petition, pursuant to Mason v. Meyers, 208 F.3d 414 (3d Cir. 2000).  The Petition presents six grounds, which are set forth below verbatim:

> GROUND ONE:  Ineffective Assistance of Counsel
>
> Supporting FACTS:  Counsel failed to investigate or consider potential defense as to why the witness would come forth with her testimony.  Counsel also failed to object to defendant's family being asked to leave the courtroom during testimony without an explanation.  Counsel failed to object to the points below.

GROUND TWO:  Fresh Complaint Testimony

Supporting FACTS:  The Fresh Complaint Testimony of R.N. Joanne Marino and Detective Louis Brecht as it was over one year old and should have been considered hearsay.

GROUND THREE:  Prior Bad Acts Testimony

Supporting FACTS:  The trial court did not remedy the error of M.P. testifying about events having to do with a prior federal offense and the judge's comment "well you opened the door" led the jury to believe the accusation was true.  The court also allowed J.P. and M.P. to testify about an unrelated exposure.

GROUND FOUR:  Defense counsel denied defendant's right to testify.

Supporting FACTS:  At the completion of the State's case, defense counsel immediately rested its case without conferring with the defendant as to whether or not he wished to testify.  This was an option that was discussed with counsel and was to be decided at trial.  Counsel usurped that decision.

GROUND FIVE:  Inappropriate use of CSAAS evidence by the prosecution.

Supporting FACTS:  the prosecution in its closing statement gave its lay opinion of how CSAAS was relevant in this case without presenting it at trial with an expert witness.  Trial court then did not instruct the jury on the function of CSAAS evidence.

GROUND SIX:  Prosecutorial misconduct.

Supporting FACTS:  Approximately two weeks before trial the prosecution agreed to plead out the case.  For the sake of all involved since the offer was just shy of an outright dismissal, the defense accepted and proceeded on that assumption that an agreement had been reached.  Two days before trial, the prosecution reneged on the offer denying defense that time to prepare for trial.  Defense counsel initially denied to appellate counsel that such a deal was even offered until pressed to explain charges on his bill.  The prosecutor who originally made the deal and transferred to another county after the case said she couldn't discuss it.

4

(Pet. ¶ 12.A. - 12.F.)

The State filed an Answer seeking dismissal of the Petition as a mixed petition, and arguing that none of the grounds asserted satisfies the standard for habeas relief. Petitioner filed a Reply, arguing that trial counsel was constitutionally ineffective.

## II.  STANDARD OF REVIEW

Section 2254(a) of Title 28 of the United States Code gives the court jurisdiction to entertain a habeas petition challenging a state conviction or sentence only where the inmate's custody violates federal law:

> [A] district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a).

"In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); 28 U.S.C. § 2254(a); accord Barry v. Bergen County Probation Dept., 128 F.3d 152, 159 (3d Cir. 1997). "Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension." Smith v. Phillips, 455 U.S. 209, 221 (1982). "If a state prisoner alleges no deprivation of a federal right, § 2254 is simply inapplicable. It is unnecessary in such a situation to inquire whether the prisoner preserved his claim before the state courts." Engle v. Isaac, 456 U.S. 107, 120 n.19 (1982).

In reviewing a § 2254 petition, a federal court is not permitted to address a federal constitutional claim pertinent to the facts of the case unless the petitioner asserts the claim as a

ground for relief.[2]  Nor may the Court recharacterize a ground asserted under state law into a federal constitutional claim.[3]  "[E]rrors of state law cannot be repackaged as federal errors simply by citing the Due Process Clause." Johnson v. Rosemeyer, 117 F.3d 104, 110 (3d Cir. 1997). Moreover, "it is well established that a state court's misapplication of its own law does not generally raise a constitutional claim." Smith v. Horn, 120 F.3d 400, 414 (3d Cir. 1997) (citations and internal quotation marks omitted); see also Smith v. Zimmerman, 768 F.2d 69, 71, 73 (3d Cir. 1985).

A district court must give deference to determinations of state courts. Duncan v. Morton, 256 F.3d 189, 196 (3d Cir.), cert. denied, 534 U.S. 919 (2001); Dickerson v. Vaughn, 90 F.3d 87, 90 (3d Cir. 1996). Federal courts "must presume that the factual findings of both state trial and appellate courts are correct, a presumption that can only be overcome on the basis of clear and convincing evidence to the contrary." Stevens v. Delaware Correctional Center, 295 F.3d 361,

---

[2] See, e.g., Withrow v. Williams, 507 U.S. 680, 695-96 (1993) (where habeas petition raised claim that the police had elicited petitioner's statements without satisfying Miranda, the district court erred when it "went beyond the habeas petition and found the statements [petitioner] made after receiving the Miranda warnings to be involuntary under due process criteria"); Baker v. Barbo, 177 F.3d 149, 156 n.7 (3d Cir. 1999) (where petition contains ground asserting the ineffective assistance of counsel during plea negotiations and trial, court is not permitted to consider ground, evident from the facts but not raised in the petition, that appellate counsel was ineffective by failing to advise petitioner that he faced a longer sentence by appealing the conviction).

[3] See Engle, 456 U.S. at 119-20 & n.19 (insofar as petitioners simply challenged the correctness of the self-defense instructions under state law, their petitions alleged no deprivation of federal rights and § 2254 was inapplicable); Kontakis v. Beyer, 19 F.3d 110, 116-17 & n.10 (3d Cir. 1994) (where petitioner asserted in § 2254 petition that the exclusion of testimony violated his rights under state law, federal court may not consider ground, not set forth in the petition, that exclusion of the testimony violated his federal due process rights).

368 (3d Cir. 2002).  Where a federal claim was "adjudicated on the merits" [4] in state court proceedings, § 2254 does not permit habeas relief unless adjudication of the claim

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision is "'contrary to' a Supreme Court holding if the state court 'contradicts the governing law set forth in [the Supreme Court's] cases' or if it 'confronts a set of facts that are materially indistinguishable from a decision of th[e Supreme] Court and nevertheless arrives at a [different] result."  Rompilla v. Horn, 355 F.3d 233, 250 (3d Cir. 2004) (quoting Williams v. Taylor, 529 U.S. 362, 405-06 (2000)).

Under the "'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  Williams, 529 U.S. at 413.  Whether a state court's application of federal law is "unreasonable" must be judged objectively; an application may be incorrect, but still not unreasonable.  Id. at 409-10.

---

[4] "An 'adjudication on the merits' has a well settled meaning: a decision finally resolving the parties' claims, with res judicata effect, that is based on the substance of the claim advanced, rather than on a procedural, or other, ground."  Rompilla v. Horn, 355 F.3d 233, 247 (3d Cir. 2004) (quoting Sellan v. Kuhlman, 261 F.3d 303, 311 (2d Cir.2001)).  A state court may render an adjudication or decision on the merits of a federal claim by rejecting the claim without any discussion whatsoever.  Rompilla, 355 F.3d at 247.

A court begins the analysis by determining the relevant clearly established law.  See Yarborough v. Alvarado, 541 U.S. 652 (2004).  Clearly established law "refers to the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision."  Williams, 529 U.S. at 412.   A court must look for "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision."  Lockyer v. Andrade, 538 U.S. 63, 71, 72 (2003).

### III.  DISCUSSION

A.  Admission of Fresh Complaint Testimony

In Ground Two, Petitioner asserts that the trial judge improperly admitted the testimony of the victim's mother, Joanne Marino, and Detective Louis Brecht, regarding the victim's "fresh complaint," as it was over one year old and was hearsay.  The government argues that this Court lacks jurisdiction over Ground Two because it does not assert violation of federal law.

Petitioner presented Ground Two on direct appeal.  The Appellate Division rejected the claim as follows:

> Defendant's argument that the trial judge erred in admitting the fresh complaint testimony of R.N., Joann Marino and Detective Louis Brecht is similarly without merit.  The testimony of these witnesses was narrowly drawn and did not detail or repeat the comments to which M.P. testified in detail.  The charge concerning fresh complaint was appropriate and was adequate to cover the testimony of Detective Brecht.  See State v. Wilbely, 63 N.J. 420, 422 (1973).

State v. Cusumano, No. A-7041-98T4 slip op. at 6 (App. Div. June 1, 2001).

Petitioner does not contend in Ground Two that the admission of the challenged "fresh complaint" testimony violated his constitutional rights, and the admissibility of evidence is

8

generally a question of state law that is not cognizable on habeas review.  See Keller v. Larkins, 251 F.3d 408, 416 n.2 (3d Cir. 2001) ("A federal habeas court, however, cannot decide whether the evidence in question was properly allowed under the state law of evidence"); Hickey v. Jeffes, 571 F.2d 762, 766 (3d Cir. 1978) ("As to the contention that the trial court erred in admitting the victim's testimony of a prior flirtatious conversation, we find that, if there was any error in the court's ruling . . . that error was at best one of interpretation of the state's law of evidence and did not arise to constitutional dimensions").  Because the admission of the victim's "fresh complaint" testimony did not violate clearly established federal law, as determined by the Supreme Court, Petitioner is not entitled to habeas relief under Ground Two. [5]

B.  Prior Bad Acts Testimony

In Ground Three, Petitioner asserts that the trial judge "did not remedy the error of M.P. testifying about events having to do with a prior federal offense and the judge's comment "well you opened the door" led the jury to believe the accusation was true.  The court also allowed J.P. and M.P. to testify about an unrelated exposure." (Pet. ¶ 12.C.)  The government argues that Petitioner is not entitled to habeas relief on Ground Three because the admission of testimony is a question of state law.  In addition, the government argues that habeas relief is unavailable because Petitioner's counsel elicited the challenged testimony.  (Answer at p. 15.)

---

[5] Even if Petitioner had so alleged, the admission of the "fresh complaint" testimony does not implicate the Confrontation Clause because M.P. testified and was cross examined. California v. Green, 399 U.S. 149, 162 (1970) (" For where the declarant is not absent, but is present to testify and to submit to cross-examination, our cases, if anything, support the conclusion that the admission of his out-of-court statements does not create a confrontation problem").

On direct appeal, Petitioner argued that the trial court erred by failing to strike the victim's testimony that the families stopped seeing each other because Petitioner gave her stepfather a disc of naked children. Petitioner also argued that the trial court erred in failing to give a limiting instruction. The Appellate Division rejected these claims because defense counsel had elicited the testimony and the instructions given by the trial court at the conclusion of the case were sufficient to alleviate undue prejudice.
State v. Cusumano, No. A-7041-98T4 slip op. at 5 (App. Div. June 1, 2001).

Petitioner does not assert in Ground Three that M.P.'s testimony regarding the disk of naked children violated his constitutional rights or that the failure to instruct the jury on this issue violated his constitutional rights. Even if Petitioner had alleged that the testimony referring to the disk with naked children violated his due process or other constitutional rights, this Court is not aware of any Supreme Court case clearly establishing that the admission of "other crimes or bad acts" evidence constitutes a violation of federal constitutional rights and the most relevant Supreme Court cases suggest the contrary. See, e.g., Estelle v. McGuire, 502 U.S. 62 (1991) (allowing evidence of prior injuries in a trial for infant murder); Spencer v. Texas, 385 U.S. 554 (1967) (rejecting due process challenge to admission of evidence of prior similar crimes when judge gives limiting instruction). In addition, Petitioner's counsel elicited the testimony that Petitioner gave the victim's stepfather a disk of naked children by asking M.P. a question, and federal courts have applied the doctrine of "invited error" to preclude habeas corpus relief.[6] See,

---

[6] "The doctrine of 'invited error' refers to the principle that a party may not complain on appeal of errors that he himself invited or provoked the court or the opposite party to commit. See 5 Am.Jur.2d § 713 (1962)." Harvis v. Roadway Exp. Inc., 923 F.2d 59, 60 (6th Cir. 1991). "Under the 'invited error' doctrine, it is an accepted matter of law that where the injection of
(continued...)

e.g., Parker v. Champion, 148 F.3d 1219, 1222 (10th Cir. 1998) ("This invited error precludes . . . the grant of any habeas relief, on the basis of the alleged improper instruction); United States v. Herrera, 23 F.3d 74, 75 (4th Cir. 1994) (applying invited error doctrine to claim presented under § 2255).  Based on the foregoing, the New Jersey courts' adjudication of Ground Three was not contrary to, or an unreasonable application of the federal Constitution, as determined by the Supreme Court.  See Minett v. Hendricks, 135 Fed. Appx. 547 (3d Cir. 2005) (rejecting claim that admission of "other crimes" evidence is contrary to or an unreasonable application of clearly established Supreme Court precedent).

C.  Prosecutorial Misconduct

In Grounds Five and Six, Petitioner presents prosecutorial misconduct claims.  In Ground Five, he asserts:

> GROUND FIVE:  Inappropriate use of CSAAS evidence by the prosecution.
>
> Supporting FACTS:  the prosecution in its closing statement gave its lay opinion of how CSAAS was relevant in this case without presenting it at trial with an expert witness.  Trial court then did not instruct the jury on the function of CSAAS evidence.

(Pet. Ground Five.)

---

[6](...continued)
allegedly inadmissible evidence is attributable to the action of the party seeking to exclude that evidence, its introduction does not constitute reversible error."  All American Life and Cas. Co. v. Oceanic Trade Alliance Council, 756 F.2d 474 (6th Cir. 1985); see also United States v. Pina, 844 F.2d 1, 8 (1st Cir. 1988) (while evidence was inadmissible, defendant cannot complain about admission of evidence regarding revolver when he initiated the inquiry by asking a question of a witness); United States v. Scarfo, 711 F. Supp. 1315, 1333 (E.D. Pa. 1989) ("Having deliberately pursued a line of inquiry that created a risk for prejudice, the defense cannot later seek relief from the results of that strategy").

11

In Ground Six, Petitioner asserts:

> GROUND SIX: Prosecutorial Misconduct.
>
> Supporting FACTS: Approximately two weeks before trial the prosecution agreed to plead out the case. For the sake of all involved since the offer was just shy of an outright dismissal, the defense accepted and proceeded on that assumption that an agreement had been reached. Two days before trial, the prosecution reneged on the offer denying defense that time to prepare for trial. Defense counsel initially denied to appellate counsel that such a deal was even offered until pressed to explain charges on his bill. The prosecutor who originally made the deal and transferred to another county after the case said she couldn't discuss it.

(Pet. Ground Six.)

Although Petitioner did not present Grounds Five or Six to the New Jersey courts on direct appeal or in his petition for post conviction relief and the claims are not exhausted, this Court will not dismiss the Petition as a mixed petition because neither ground presents a colorable federal claim. See 28 U.S.C. § 2254(b)(2); Lambert v. Blackwell, 134 F.3d 506, 515 (3d Cir. 1997) (district court may deny an unexhausted petition on the merits under § 2254(b)(2) "if it is perfectly clear that the applicant does not raise even a colorable federal claim").

Prosecutorial misconduct may "so infect[] the trial with unfairness as to make the resulting conviction a denial of due process." Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974). Where "specific guarantees of the Bill of Rights are involved, [the Supreme] Court has taken special care to assure that prosecutorial misconduct in no way impermissibly infringes them." Id. at 642. The quantum or weight of the evidence is crucial to determining whether the prosecutor's conduct resulted in a denial of due process. Darden v. Wainwright, 477 U.S. 168, 182 (1986); Donnelly, 416 U.S. at 644; Moore v. Morton, 355 F.3d 95, 111 (3d Cir. 2001).

In Ground Five, Petitioner challenges the fact that the prosecutor commented about the lay testimony from the victim and her mother concerning child sexual assault accommodation syndrome, testimony which the Appellate Division found was admissible.  Petitioner also challenges the trial court's failure to instruct the jury in regard to this testimony.  Petitioner does not contend in the Petition that the prosecutor's comments during summation violated due process or the federal Constitution, nor does he contend that the failure to instruct the jury on this issue violated the Constitution.  Although the Appellate Division did not entertain these claims, the Appellate Division rejected a related claim, finding that "[t]he testimony of the victim and her mother describing factual observations and the demeanor of M.P. including her bad school grades, drug abuse and depression did not constitute expert testimony."  State v. Cusumano, No. A-7041-98T4 slip op. at 6.

Because the prosecutor's comments did not "so infect[] the trial with unfairness as to make the resulting conviction a denial of due process" Donnelly, 416 U.S. at 643, Petitioner does not present a colorable due process claim.  Because Petitioner does not "point to a federal requirement that jury instructions . . . must include particular provisions" or demonstrate that the failure to give the "instructions deprived him of a defense which federal law provided to him," Johnson v. Rosemeyer, 117 F.3d 104, 110 (3d Cir. 1997), the failure to instruct on use of the child sexual abuse syndrome testimony does not present a colorable federal claim.

In Ground Six, Petitioner complains that the prosecutor committed unconstitutional misconduct by reneging on the offer of a plea bargain after Petitioner had indicated that he would accept the offer.  This does not present a colorable federal claim because the Supreme Court has

held that "there is no constitutional right to plea bargain; the prosecutor need not do so if he prefers to go to trial." Weatherford v. Bursey, 429 U.S. 545, 561 (1977).

D.  Ineffective Assistance of Counsel

In Grounds One and Four, Petitioner cites numerous instances of deficient performance by defense counsel.  Specifically, in Ground One he asserts:

> Counsel failed to investigate or consider potential defense as to why the witness would come forth with her testimony.  Counsel also failed to object to defendant's family being asked to leave the courtroom during testimony without an explanation.  Counsel failed to object to the points below[, that is, failed to object to Petitioner's family being asked to leave the room during the victim's testimony, failed to object to fresh complaint testimony, failed to object to M.P.'s testimony regarding unrelated exposure and disk with naked children, and failed to object to prosecutor's comments during summation].

(Pet. ¶ 12.A.)  In Ground Four, Petitioner contends that counsel denied his right to testify:

> At the completion of the state's case, defense counsel immediately rested its case without conferring with the defendant as to whether or not he wished to testify.  This was an option that was discussed with counsel and was to be decided at trial.  Counsel usurped that decision.

(Pet. ¶ 12.D.)

In his Reply to the state's Answer, Petitioner elaborates on his ineffective assistance of counsel claims:

> POINT I - INCORRECT THEORY OF DEFENSE
> It has always been my defense that the charges leveled against me were due to the problems MP was having dealing with the divorce and remarriage of her mother.  The fact that the Deputy State Attorney General has deduced an entirely different theory of defense from the record itself states how ineffective my attorney was in putting forth this defense.  As for not having a "scintilla" of evidence that a different defense was available, it was my

14

> assumption that I would be afforded the opportunity to provide such evidence at an evidentiary hearing. In summary, my wife was at all the meetings with my lawyer and can testify as to what our defense was supposed to be and the discovery bears out the theory that was supposed to be put forth in the fact that MP's mother testified to police that the psychiatrist told her that MP's problems were caused by the divorce and no mention was made by the psychiatrist to MP's mother of any sexual abuse from anyone.
>
> POINT II - LACK OF DEFENSE
> Although we had preliminarily agreed that I would probably not take the stand in my defense, it was assumed that after the prosecution laid out its case we would make the determination as to whether or not my wife, I, or both would testify. My wife was even sequestered outside the courtroom in anticipation of her testifying. As she was in the room next door she was to offer testimony that she heard none of the activities that MP testified to and that the very next morning she noticed absolutely nothing in MP's demeanor that would suggest anything traumatic had occurred. My lawyer rested without consulting me immediately after the prosecution rested. We felt that my lawyer was in a rush to get this case over with as he stated to myself and several other members of my family that his father was on his deathbed and he may have to halt the trial at any moment if he receives word of his imminent death. He also stated to my wife and me that in preparing his closing arguments he was rushed and that he was not able to do his best.

(Petitioner's Reply at 1-2.)

The Sixth Amendment, applicable to states through the Due Process Clause of the Fourteenth Amendment, guarantees the accused the "right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. The right to counsel is the right to the effective assistance of counsel, and counsel can deprive a defendant of the right by failing to render adequate legal assistance. Strickland v. Washington, 466 U.S. 668, 686 (1984). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so

15

undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Id.

A claim that counsel's assistance was so defective as to require reversal of a conviction has two components, both of which must be satisfied. Strickland, 466 U.S. at 687. First, the defendant must "show that counsel's representation fell below an objective standard of reasonableness." Id. at 687-88. To meet this prong, a "convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." Id. at 690. The court must then determine whether, in light of all the circumstances at the time, the identified errors were so serious that they were outside the wide range of professionally competent assistance. Id.

To satisfy the second prong, the defendant must show that "there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Id. at 695.

In this case, Petitioner presented the deficiencies which he asserts here on post conviction relief. The Law Division rejected all of Petitioner's claims without conducting an evidentiary hearing, concluding that the challenged conduct involved strategic decisions. After reviewing the standard under Strickland and the alleged deficiencies of counsel, the Appellate Division rejected most of the claims Petitioner raises here without discussion. State v. Cusumano, 369 N.J. Super. 305 (App. Div. 2004). However, the Appellate Division emphasized that counsel was not ineffective in failing to object to the judge's decision to deny ingress and egress from the courtroom while the child victim testified because it was "a reasonable and constitutionally permissible limitation on the public's right of access." Id. at 873-74.

16

Counsel was not constitutionally deficient in declining to defend the case on the theory that the mother's divorce and remarriage caused the child's drug abuse and emotional problems. Counsel knew through discovery what the victim's mother had told police about her daughter's problems, and the decision not to pursue the specified defense was a strategic choice. See Strickland, 466 U.S. at 90-91 ("strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary"); Hess v. Mazurkiewicz, 135 F.3d 905, 908 (3d Cir. 1998).

Counsel was not constitutionally deficient in failing to object to fresh complaint testimony, to object to the court's asking Petitioner's family to leave the courtroom during the victim's testimony, to object to the victim's testimony, and to object to the prosecutor's comments. None of items to which counsel failed to object violated state or federal law and an attorney cannot be constitutionally ineffective in failing to object to that which does not violate the law. See Carpenter v. Vaughn, 296 F.3d 138, 153 (3d Cir. 2002) ("his attorney cannot have been ineffective for failing to request an instruction that was unavailable").

Nor is Petitioner entitled to habeas relief based on his claim that counsel usurped his decision to testify. The right to testify on one's own behalf in defense to a criminal charge is a fundamental constitutional right. See Rock v. Arkansas, 483 U.S. 44, 53 n.10 (1987). But it is clear from the Petition and Reply that Petitioner knew he had a right to testify, as Petitioner states that he had discussed the possibility with counsel and he had tentatively decided not testify. Petitioner does not contend that he was unaware of his right to testify. Rather, he contends that

17

counsel did not allow him to make the final decision himself.  Petitioner does not indicate that he would have exercised his right to testify or that he told counsel at any point that he wished to testify.  Nor does Petitioner specify what testimony he would have given.

It is unnecessary for this Court to decide whether counsel's performance was deficient because Petitioner has failed to demonstrate that "there is a reasonable probability that, absent the error[], the factfinder would have had a reasonable doubt respecting guilt."  Strickland, 466 U.S. at 695.  The Supreme Court teaches that a "reasonable probability" in this context "is a probability sufficient to undermine confidence in the outcome."  Id.  The evidence against Petitioner was strong, and Petitioner does not indicate the nature of the testimony he would have given that would have raised a reasonable doubt respecting his guilt.  See Frederick v. Kyler, 100 Fed. Appx. 872 874-75 (3d Cir. 2004) (holding that Frederick was not entitled to habeas relief on claim that counsel led him to believe that he did not have a right to disregard counsel's advice against testifying because Frederick failed to demonstrate that, but for counsel's error, the result of the proceeding would have been different).

Because the New Jersey courts' adjudication of Petitioner's ineffective assistance of counsel claims did not result in a decision that was contrary to or an unreasonable application of Strickland or its progeny, Petitioner is not entitled to habeas relief on his ineffective assistance of counsel claims.

E.  Certificate of Appealability

The Court denies a certificate of appealability because Petitioner has not made "a substantial showing of the denial of a constitutional right" under 28 U.S.C. § 2253(c)(2).  See Miller-El v. Cockrell, 537 U.S. 322 (2003).

## IV.  CONCLUSION

Based on the foregoing, the Court dismisses the Petition with prejudice and declines to issue a certificate of appealability under 28 U.S.C. § 2253(c).

s/Robert B. Kugler<br>
**ROBERT B. KUGLER, U.S.D.J.**

DATED:      May 18     , 2006